United States District Court
For The District of Columbia

| | |
|---|---|
| United States of America,<br><br>v.<br><br>Nathan Wayne Entrekin,<br><br>Defendant. | Case No. 21-cr-00686 (FYP) |

## Motion for Early Termination of Probation

Mr. Nathan Wayne Entrekin, through undersigned counsel, moves for early termination of probation pursuant to 18 U.S.C. § 3564(c). Although "a defendant may not get probation and imprisonment for a single petty offense," *United States v. Little*, No. 22-3018, 2023 WL 5313529, at *3 (D.C. Cir. Aug. 18, 2023), Mr. Entrekin has already served his 45-day imprisonment term and more than one year of his three-year term of probation for a single petty offense under 40 U.S.C. § 5104(e)(2)(G), and has fulfilled each special condition of probation this Court ordered. The U.S. Probation Office itself confirms Mr. Entrekin's full compliance with the conditions of probation, although it does not support early termination at this time because Mr. Entrekin recently moved within Arizona. However, early termination of his probation is overwhelmingly supported by the applicable 18 U.S.C. § 3553(a) factors, his conduct while imprisoned and on probation, and in the interests of justice.

I.  **Background**

In November 2021, Mr. Entrekin was charged by information with five counts related to his activities on January 6, 2021. *See* Information. ECF No. 11 (Nov. 18, 2021). In January 2022,

1

pursuant to a plea agreement, he pled guilty to a single petty offense (Count 5) of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). *See* Plea Ag't, ECF No. 22 (Jan. 14, 2022); Min. Entry (Jan. 14, 2022).

The government requested a split sentence of 105 days of incarceration and three years of probation, 60 hours of community service, and $500 in restitution. *See* Gov't Sent'g Mem. at 1, ECF No. 28 (Apr. 15, 2022). Mr. Entrekin requested a year of probation and $500 in restitution, and asserted that a split sentence of incarceration and probation was statutorily impermissible. *See* Def. Sent'g Mem. at 11, ECF No. 27 (Apr. 15, 2022); Def. Reply at 2-3, ECF No. 29 (Apr. 22, 2022).

On April 6, 2022, this Court sentenced Mr. Entrekin to 45 days of incarceration, followed by 36 months of probation, and $500 in restitution. *See* Judgment, ECF No. 34 (May 6, 2022). Mr. Entrekin finished serving his term of incarceration on July 29, 2022, and is currently serving his three-year term of probation.

## II.    Legal Standard

Motions for early termination of probation are governed by 18 U.S.C. § 3564(c). Section 3564(c) allows a court to terminate probation at any time for a misdemeanor or infraction and after a year for a felony upon consideration of: (1) the applicable 18 U.S.C. § 3553(a) factors, (2) "the conduct of the defendant," and (3) "the interest of justice." 18 U.S.C. § 3564(c).[1] The

---

[1] Section 3564(c) reads in full:

> The court, after considering the factors set forth in section 3553(a) to the extent that they are applicable, may, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, terminate a term of probation previously ordered and discharge the defendant at any time in the case of a misdemeanor or an infraction or at any time after the expiration of one year of

applicable § 3553 factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) whether the sentence reflects the seriousness of the offense, promote respect for the law, provide just punishment, deters other criminal conduct, protects the public, and provides the defendant with training, medical care or other correctional treatment; (3) the kinds of sentences available; (4) the need to avoid unwarranted sentencing disparities; and (5) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1)–(3), (6)-(7).[2] A court must ensure that the sentence is sufficient, but not greater than necessary, to accomplish the goals of sentencing. *Id*. § 3553(a). In the analogous context of early termination of supervised release, the D.C. Circuit has held that a district court must explain its consideration of the relevant § 3553(a) factors, unless the reasons for denying or granting the motion "are apparent from the record." *United States v. Mathis-Gardner*, 783 F.3d 1286, 1289-90 (D.C. Cir. 2015).

### III.  Argument

As an initial matter, Mr. Entrekin is eligible for early termination now because he was convicted of a misdemeanor, for which § 3564(c) imposes no time limitation. Moreover, early termination is warranted by the applicable § 3553(a) factors, Mr. Entrekin's conduct, and the interests of justice.

---

probation in the case of a felony, if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice.

[2] Section 3553(a) also includes factors related to the United States Sentencing Guidelines, *see* 18 U.S.C. § 3553(a)(4)-(5), which do not apply to Mr. Entrekin's misdemeanor conviction.

### A. Section 3553(a) factors

The relevant § 3553(a) factors support early termination of probation. For Mr. Entrekin's offense conduct under § 3553(a)(1), while "[t]he gravity of the crimes committed on January 6th, 2021, cannot be overstated[,]" and he was "part of [the] mob that swarmed the capitol," entering it twice, this Court recognized that "Mr. Entrekin was not one of the leaders of the mob, and he did not engage in acts of violence or destruction of property[.]" Sent'g Hr'g Tr. at 52-53 (May 6, 2022), ECF No. 39. In fact, "[h]is actions were not violent, [] he did not directly confront law enforcement officers[,]" and "he did seem to want to avoid that[.]" *Id.* at 54.

Mr. Entrekin's personal characteristics further support early termination: he is a 50-year-old college graduate with a master's degree in education, an Eagle Scout who "lives with his mother and enjoys a close relationship with her," and she "relies on him to take care of her," with consistent employment in a variety of positions. *Id.* at 54-55. Mr. Entrekin expressed his remorse, which this Court found was "sincere." *Id.* at 55. And as further described below as to his conduct in prison and on probation, Mr. Entrekin has continued to show his strength of character by successfully completing his prison term, beginning work almost immediately upon release, continuing to help his mother in their home, and quickly completing the special conditions this Court placed on his probation.

Early termination of probation also would result in a sentence that reflects the seriousness of the offense, the need for deterrence, the protection of the public, and the need for training, medical care or other correctional treatment. 18 U.S.C. § 3553(a)(2). Mr. Entrekin's 45 days of imprisonment and over a year of probation is a serious sentence for a petty offense that, as further

4

discussed below, is punishable by imprisonment or probation, but not both. And such a sentence has already served its deterrence purpose: research shows that "[t]he certainty of being caught is a vastly more powerful deterrent than the punishment," and that "[i]ncreasing the severity of punishment does little to deter crime." National Institute of Justice, U.S. DOJ Office of Justice Programs, *Five Things About Deterrence* (2016).[3] The public needs no more protection from Mr. Entrekin, whom this Court recognized was remorseful for his conduct and who, as further described below, completed his imprisonment without incident, has had no violations while on probation, performed his community service, and successfully fulfilled the mental health condition of his probation. Indeed, the sentence Mr. Entrekin has so far served has already provided the medical care this Court believed he might need because Mr. Entrekin completed his mental health assessment and his recommended therapy. None of the considerations under 18 U.S.C. § 3553(a)(2) counsels in favor of further probation.

Early termination is especially warranted by § 3553(a)(3), the kinds of sentences available. The probationary term that Mr. Entrekin is currently serving following his imprisonment term is not, in fact, a statutorily available sentence for a single petty offense. The defendant in *Little* was sentenced to just such a split sentence of imprisonment followed by probation, but this decision was overturned on appeal. *See Little*, 2023 WL 5313529, at *1, *7. The D.C. Circuit explained that "[p]robation and imprisonment are alternative sentences that cannot generally be combined," so that "the district court could not"—as was done here—"impose both for Little's petty offense." *Little*, 2023 WL 5313529, at *1, *3. Specifically holding that "a defendant may not get probation and imprisonment for a single petty offense," the Court made clear that the

---

[3] Available at https://nij.ojp.gov/topics/articles/five-things-about-deterrence.

available sentences are "(1) probation, (2) a fine, (3) imprisonment, (4) probation and a fine, or (5) imprisonment and a fine." *Id.* at *5. And, as the D.C. Circuit underscored, this statutory scheme means that "[o]nce a petty offender is done with imprisonment he may move on with his life," with no further postconfinement monitoring. *Id.* (citing 18 U.S.C. § 3583(b)(3)). Because Mr. Entrekin is "done with" his 45 days of imprisonment for his single petty offense, he should be able to "move on with his life." Early termination would fulfill this statutory scheme.

The need to avoid unwarranted sentencing disparities also strongly counsels in favor of early termination. 18 U.S.C. § 3553(a)(6). No individual sentenced for a single petty offense after *Little* will serve a sentence of imprisonment and probation. Maintaining Mr. Entrekin's current term of probation will thus perpetuate an unwarranted sentencing disparity between Mr. Entrekin and others convicted of petty offenses.

Finally, Mr. Entrekin has already fulfilled this Court's restitution order. 18 U.S.C. § 3553(a)(7).

In light of *Little*, requiring Mr. Entrekin to serve any additional time on probation would result in a sentence that is far greater than necessary. A sentence of 45 days of imprisonment and over a year of probation serves every purpose of sentencing, and early termination should be granted.

### B. Mr. Entrekin's conduct

Early termination is further supported by Mr. Entrekin's conduct while imprisoned and on probation. Mr. Entrekin completed his 45 days at MCC San Diego without any disciplinary issues. Upon his release, he almost immediately began to drive for Uber again, which he does for about 40 hours each week. He and his mother first lived in Cottonwood, Arizona, but relocated

to Mesa, Arizona, near Phoenix, a few weeks ago. With money from his Uber work, he helps his mother pay for rent and other necessities, and was thankfully there to help her as she recovered from long Covid symptoms.

Chelsea Opper, Mr. Entrekin's Probation Officer in Arizona, confirmed that, since his release, Mr. Entrekin has fulfilled the mental health, drug testing, community service, and restitution requirements of his probation. Specifically, Probation Officer Opper stated in an email to counsel on September 28, 2023, that:

> At this time, all special conditions have been met.
>
> – He completed mental health treatment through Spectrum Healthcare.
> – Completed 60 community service hours [.]
> – Financial obligations have been paid in full ($10[] special assessment fee and the $500 restitution[.]
> – All mandatory drug tests have been submitted (negative for illicit substances)[.]

Specifically, Mr. Entrekin's mental health assessment led to a monthly call with a therapist for approximately six months, after which the therapist indicated that he had no further need for treatment, while he fulfilled his 60 hours of community service by picking up trash through the Arizona Department of Transportation and answering the phones at Duet, a Phoenix non-profit organization which assists elderly people who cannot leave their homes.

According to Probation Officer Opper, the sole reason that the Probation Office opposes early termination now is that Mr. Entrekin recently moved "to the Phoenix metroplex" and she wants to monitor his "adjustment to the change of environment," but his move should not factor against early termination. The landlord who owned the property in which Mr. Entrekin and his mother lived in Cottonwood, Arizona was selling that property, and they could not remain. After looking extensively in the same area but being priced out of all the properties, they were only able

7

to find housing within their limited means near Phoenix.  To factor this economically forced relocation against Mr. Entrekin would be to penalize him for his financial circumstances.  Instead, his relocation should not prevent early termination, where his conduct in prison and on probation makes clear that no further probation is necessary.

### C. *The interests of justice*

Early termination of Mr. Entrekin's probation should also be granted in the interests of justice.  Justice would not be served by requiring Mr. Entrekin to serve more years of probation where, by statute, he never should have served both imprisonment and probation.  Mr. Entrekin has applied to truck driving school in order to position himself for a higher-paying job, and was told that he cannot participate while on probation; the school specifically told him to call them once he is off probation so that they can process his paperwork.  Early termination would thus help in Mr. Entrekin's quest for new and better-paying jobs.  Justice requires that, now that he has finished his time in prison, he be allowed to "move on with his life[.]" *Little*, 2023 WL 5313529, at *5.

## IV.  Conclusion

Mr. Entrekin has already fully served his imprisonment term, a year of his probation, and all of his special probationary conditions.  Allowing him to move on with his life is overwhelmingly supported by his conduct and the interests of justice.  He therefore respectfully asks this Court to terminate his probation early.

        Respectfully submitted,

        A. J. KRAMER
        FEDERAL PUBLIC DEFENDER

        _____/s/_____
        Joanna Munson Perales
        Research & Writing Attorney
        625 Indiana Ave. NW, Ste. 550
        Washington, D.C. 20004
        (202) 208-7500